IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 13-4530 |
| | : | |
| RICHARD L. BROWN JR., | : | |
| Defendant. | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                 **January 28, 2015**

The United States of America, on behalf of the Rural Housing Service of the U.S. Department of Agriculture, brought this action against Richard L. Brown, Jr. requesting foreclosure of the defendant's real property due to his mortgage being in default. This is the Government's third motion for default judgment. For the foregoing reasons, I will deny this motion.

**I.      BACKGROUND**

On September 28, 2009, the Rural Housing Service (RHS) of the U.S. Department of Agriculture, loaned the Richard L. Brown $189,900.00 for a mortgage of a home located at 275 Cypress Street, Bainbridge, PA 17502 in Conoy Township, Lancaster County.[1] The Government obtained the mortgage pursuant to Title V of the Housing Act of 1949, 42 U.S.C. §§ 1471–1490t.[2] Mr. Brown executed and delivered a promissory note

---

[1] Compl., Doc. No. 1, Ex. A & B; Doc. No. 14, Ex. A, B.

[2] Id., Ex. D; Doc. No. 14, Ex. A, B.

in the amount of the loan and also executed a real estate mortgage on the property.[3] The property was mortgaged to the U.S. Government and the mortgage was duly recorded on October 2, 2009.[4] As part of the execution of the mortgage and promissory note on his home, Mr. Brown also enrolled in the Rural Housing Service's Payment Assistance/Deferred Mortgage Program, which provided him with a subsidy towards his mortgage each month.[5]

On August 6, 2013, the Government filed this complaint against Brown, seeking to foreclose on the mortgage. The defendant did not answer the complaint. On October 24, 2013, the Government requested the Clerk of Court enter a default against the defendant.[6] On October 24, 2013, the Clerk of Court entered such a default. On October 24, 2013, the Government filed a motion for default judgment.[7]

On December 18, 2013, I denied the Government's motion without prejudice, due to deficiencies in the motion.[8] Specifically, the Government failed to show that adequate notice was provided to the defendant and to provide supporting documentation for its

---

[3] See id., Ex. A; Doc. No. 14, Ex. A, B.

[4] Id. at ¶ 6; Doc. No. 14, Ex. A.

[5] See Doc. No. 14, Ex. C.

[6] See Doc. No. 3.

[7] See Doc. No. 4.

[8] See Doc. No. 7.

calculation of fees and costs.[9] I allowed the Government to resubmit the motion to cure the deficiencies noted.

On January 9, 2014, the Government filed a second motion for default judgment.[10] The Government offered evidence that the defendant received notice of his rights regarding the foreclosure.[11] However, the Government again failed to offer information which would allow me to calculate damages to a "reasonable certainty." Specifically, the Government offered no explanation of the outstanding interest, late charges, and escrow calculations. The Government also failed to explain or offer evidence that "fees required with payoff funds" and "fees currently assessed" charges were owed by the defendant. I

---

[9] Plaintiff's counsel also failed to include the requisite information to establish that his attorney's fees were appropriate. In the second motion for default judgment he cured this deficiency, and I found that his requested attorney's fees of 5%, totaling $9,082.78 were not unreasonable under available caselaw. U.S. v. Brown, No. 13-4530, 2014 WL 657518, at *4 (E.D. Pa. Feb. 20, 2014)(Stengel, J.).

In this motion, plaintiff's counsel now only requests $1650 in attorney's fees since it is the contracted rate for his services. I will accept this lower amount as being an appropriate fee for the attorney's work, especially since it more appropriately reflects the amount of time and resources the attorney has used in preparing this motion. See U.S. v. Buskell, No. 13-6630, 2014 WL 1765386, at *7 (E.D. Pa. May 2, 2014).

The Government has indicated it has waived subsidy recapture fees "due to property value." See Doc. No. 14, Ex. G. What this means is not entirely clear. As part of the program, the defendant signed a "Subsidy Repayment Agreement." The agreement indicates that the Government may seek repayment of the subsidies it paid if the defendant fails to occupy the home, transfers title to the home, refinances the home, or pays for it in full. None of these conditions appear to apply in this situation. See Doc. No. 14, Ex. C. Yet, the agreement also says that "[a]ll deferred payments outstanding at the time the property is sold or title transferred are subject to recapture." See Doc. No. 14, Ex. C. Nonetheless, since the Government is not seeking subsidy recapture, this fee amount is considered waived and the defendant will not be expected to repay it.

[10] See Doc. No. 8.

[11] After I determined that this notice was sufficient, the Government admitted in a similar case in this district, United States v. Buskell (E.D. Pa. 13-cv-6630)(Restrepo, J.), that it did not comply with Pennsylvania Act 91. See United States v. Buskell, 13-cv-6630, Doc. No. 21, at 2-3. In Buskell, the Government argued that it was not bound by Act 91, which requires a lender to provide a borrower with a notice of rights under Act 91 and give the borrower thirty-three days to meet with a qualified housing counselor. I agree with Judge Restrepo that the Government's determination that it does not have to comply with Pennsylvania's more favorable mortgage foreclosure protections found in Act 91 is questionable under available case law. See United States v. Buskell, No. 13-cv-6630, 2014 WL 1765386, at *2-7 (E.D. Pa. May 2, 2014); United States v. Buskell, 13-cv-6630 (E.D. Pa.), Doc. No. 21, at 3 n. 1. I will still consider the notice adequate, given that I previously ruled on this point. If I had to make this determination at this time, my decision may be different in light of the findings in Buskell.

again denied the plaintiff's second motion for default judgment without prejudice.[12] The Government now brings this third motion for default judgment.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 55(b)(2) provides that a district court may enter default judgment against a party when default has been entered by the Clerk of Court. FED. R. CIV. P. 55(b)(2). Entry of a default judgment is within the court's discretion and is not automatic in the instance of "a defendant's failure to respond to the complaint." D'Onofrio v. Il Mattino, 430 F. Supp. 2d 431, 437 (E.D. Pa. 2006) (citing Mwani v. bin Laden, 417 F.3d 1, 6 (D.C. Cir. 2005); Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984)). Judgment by default is generally disfavored in the interest of deciding a case on its merits. Budget Blinds, Inc. v. White, 536 F.3d 244, 258 (3d Cir. 2008); United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194–95 (3d Cir. 1984).

## III.   DISCUSSION[13]

Included in this motion are an itemization of the defendant's payments, escrow posting, and late fees.[14] The mortgage, promissory note, and payment assistance

---

[12] The plaintiff had also failed to include an affidavit by counsel, which has been included in this second motion. See Doc. No. 9.

[13] This court has jurisdiction over cases involving foreclosures of mortgages issued pursuant to the National Housing Act. See United States v. Black, 622 F. Supp. 669, 673 (W.D. Pa. 1985) (citing United States v. Scholnick, 606 F.2d 160, 164 (6th Cir. 1979); United States v. Victory Highway Vill., Inc., 662 F.2d 488, 497 (8th Cir. 1981); United States v. Stadium Apartments, Inc., 425 F.2d 358, 360 (9th Cir. 1970)). See also United States v. Kimbell Foods, Inc., 440 U.S. 715, 726 (1979) ("Since the agencies derive their authority to effectuate loan transactions from specific Acts of Congress passed in the exercise of a 'constitutional function or power,' their rights, as well, should derive from a federal source." (citation omitted)); United States v. Stohr, No. Civ. A. 92–2981, 1993 WL 44238, at *2 (E.D.Pa. Feb. 22, 1993).

[14] In its second motion for default judgment, the Government included an itemization of fees, the notice of acceleration, and the defendant's reapplication to the subsidy program. No explanation of the charged fees or of the subsidy program was included with that motion. See Doc. No. 8, Ex. A-F.

agreement are also attached to this motion. They had not been provided in previous motions. The various agreements between the parties offer more information about the arrangement between the Government and the defendant regarding the Rural Housing Service's Payment Assistance/Deferred Mortgage Program—both elucidating the basis for the Government's claims and raises more questions about them.

### a. Defendant's Expected Payments Under the Payment Assistance/Deferred Mortgage Program

At the same time the Government and Mr. Brown executed the mortgage and promissory note, Mr. Brown enrolled in the Rural Housing Service's Payment Assistance/Deferred Mortgage Program. Through this program, he received a monthly subsidy towards his mortgage.[15] When he applied in September 2009, Mr. Brown was required to pay $565.39 monthly towards the cost of his mortgage based on his income of $37,000 a year. The Government agreed to provide a monthly subsidy of $414.74. At that time, his real estate taxes were expected to be $2469.42 a year and his property insurance was $391.00 annually.[16] To cover these expenses, Mr. Brown was expected to pay $238.36 monthly into his escrow account.[17] The Government would then pay the taxes and insurance from this account.[18] Overall, Mr. Brown was initially expected to make payments of $803.75 a month to cover his portion of the mortgage payment, his

---

[15] See Doc. No. 14, Ex. C.

[16] See Doc. No. 14, Ex. C.

[17] This would be $1/12^{th}$ of his yearly taxes plus insurance ($2469.42 + $391=$2860.42/12). See Doc. No. 14, Ex. D at 22-23 ("Escrow Posting" column); Doc. No. 14, Ex. A (Mortgage) at 2 of 6; Doc. No. 14, Ex. C.

[18] See Doc. No. 14, Ex. A (Mortgage) at 2 of 6.

insurance, and his taxes.[19] Mr. Brown made timely payments towards his principal, interest, and escrow for almost two years—from October 2009 through July 2011.[20]

In August 2011, Mr. Brown reapplied for this subsidy program.[21] As part of this process, the Government sent Mr. Brown a letter asking him to verify his household income. The letter was dated July 29, 2011. Mr. Brown filled out this form and signed it on August 23, 2011. At that time, he and his wife had a combined household income of $55,000.00.[22] Their real estate taxes increased to $2917 a year and their annual property insurance totaled $401.[23] The form was received by the Government on August 29, 2011.[24] The subsidy renewal application did not indicate how this reapplication would affect the defendant's subsidy and when any possible change might be effective.[25]

### b. Questions About Mr. Brown's Obligations After Reapplication

It is not entirely clear what Mr. Brown's monthly payment was expected to be after he reapplied to the program. When Mr. Brown initially enrolled in the program, he signed a payment assistance/deferred mortgage assistance agreement.[26] This agreement

---

[19] See Doc. No. 14, Ex. D at 22-23.

[20] See Doc. No. 14, Ex. D at 22-23.

[21] See Doc. No. 13, Ex. C (Rural Housing Service Payment Subsidy Renewal Certification).

[22] See id.

[23] See id.

[24] See id.

[25] The original subsidy agreement stated it was effective for 24 months beginning on October 28, 2009. See Doc. No. 13, Ex. C. From that clause, it would seem that the reapplication would be effective in October 2011. However, the application itself does not indicate this.

[26] See Doc. No. 13, Ex. C.

6

specifically explained what the defendant's expected monthly payments would be. The Government did not provide a subsidy agreement governing the reapplication period. From what has been provided, it is unclear what the defendant's monthly mortgage payments were expected to be after Mr. Brown's reapplication was made.[27]

There is also some evidence that Mr. Brown was not clear on what his payment obligations were after he reapplied. Unlike the previous twenty-one months, Mr. Brown's mortgage payments became inconsistent after July 2011. According to the Government's records, he did not make a payment in August. His next payment was made on September 30, 2011. This amount was the same as before, $905.78. He then made a payment on November 4, 2011 of $951.00. On December 2, 2011, Brown submitted a $1000 payment. His next payment was made on February 1, 2012. It was in the amount of $1430.43. On February 28, 2012, Brown again made a payment in the amount of $1430.43. On March 30, 2012, he made another payment of $1430.43. These last three payments were more than the defendant was expected to pay. After March, no further payments were made.

The Government would like me to see these inconsistent payments as evidence supporting a judgment in its favor.[28] This is one way of reading the defendant's

---

[27] The documentation provided by the Government indicates that the defendant's subsidy dropped from $414.74 to $72.20 beginning with his October 2011 payment. There is also no documentation to show that the defendant received notice of this subsidy reduction or an explanation of why the subsidy was reduced so substantially.

[28] By the Government's calculations, the defendant began to default on his mortgage beginning in August. The Government recorded his August payment as being made on September 30, 2011. His November 4, 2011 payment was applied to his September bill. His December 2, 2011 payment of $1000 was not applied to any outstanding payments at all. His February 1, 2012 payment went towards his October bill. His February 28, 2012 payment was used to fulfill his November debt. The overages of each of those payments was applied to December's bill. His

behavior.[29] Another would be that there was some confusion about what the defendant was expected to pay after he submitted his reapplication for the subsidy program.[30] If Mr. Brown was unsure of what his monthly payment would be after he sent in his reapplication, he may have a valid defense for delaying his payment or paying less than he was expected to pay. See Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir.2000)(citation omitted).

The Government has not provided the terms of the subsidy agreement between the parties after Mr. Brown's reapplication. The Government has also offered no evidence that Mr. Brown was made aware of the change in his subsidy and mortgage payments. Without seeing that agreement, I cannot determine whether the defendant necessarily breached the agreement or determined with a "reasonable certainty" what damages are owed the Government.[31] Since the subsidy arrangement between the

---

March payment was applied to January. Each month the Government charged the defendant a late fee for failing to pay on time.

[29] See Joe Hand Promotions, Inc. v. Yakubets, 3 F.Supp.3d 261, 266 (E.D. Pa. 2014)("An unopposed motion for default judgment can be a tempting invitation to defer automatically to, or at least consider more charitably, the plaintiff's view of the law in addition to his allegations of fact.... If, by contrast, the district court accepts the plaintiff's invitation and grants its imprimatur to the plaintiff's unchallenged legal *theory*, the court risks making bad law, even though that law is only persuasive authority, and even though the court is 'confined from molar to molecular motions.'" (quoting S. Pac. Co. v. Jensen, 244 U.S. 205, 221, 37 S.Ct. 524, 61 L.Ed. 1086 (1917) (Holmes, J., dissenting))); U.S. v. Buskell, No. 13-6630, 2014 WL 1765386, at *2 (E.D. Pa. May 2, 2014).

[30] After August, the other payments made by the defendant were submitted in what would be considered a timely manner—within 15 days of the 28th day of previous month. If the August payment were somehow lost, inadvertently missed, or never applied to the defendant's mortgage, it would appear that he just continued to be making payments. In light of Mr. Brown's record of consistently paying his mortgage for almost two years, this interpretation is highly plausible. Under that rendering of the facts, Mr. Brown's late fees would not be warranted.

[31] At this point, I find little prejudice to the Government in denying this motion at this time. The Government is essentially asking for damages against the defendant. Assuming that relief is warranted, the Government will be able to collect interest to compensate for delays in foreclosing on the defendant's home. If I were to improperly grant the Government's motion, however, the defendant could lose his home. He also may be required to pay fees and costs much beyond his financial means. The possible burdens on each party weigh in favor of denying the motion until the Government has offered information to show it is entitled to relief.

Government and the defendant was tied up with the Mr. Brown's obligations under the mortgage and the promissory note, I cannot determine that judgment in the plaintiff's favor is appropriate from what has been provided.[32]

### IV. CONCLUSION

I am unable to assess whether judgment in the Government's favor is appropriate. I am denying the plaintiff's motion for default judgment without prejudice; the plaintiff may resubmit the motion with the appropriate documentation in order to cure the deficiencies noted above.

An appropriate Order follows.

---

[32] The additional documentation offered by the Government has clarified some of the questions regarding fees left unanswered in its last motion for default judgment. However, the Government has still failed to explain what the basis is for the "fees collected by autopost" and the "interest collected on fees." None of the agreements between the parties seem to authorize these charges or a charge of interest on top of these fees. The Government is expected to explain these fees and interest if it files another motion.